# In the United States Court of Federal Claims

**No. 10-264C**
**(Filed: June 17, 2011)**
**NOT FOR PUBLICATION**

```
* * * * * * * * * * * * * * * *
                               *
KRISTIAN M. MCCAIN and         *
KELLY S. MCCAIN,               *
                               *
          Plaintiffs,          *
                               *
v.                             *
                               *
THE UNITED STATES,             *
                               *
          Defendant.           *
                               *
* * * * * * * * * * * * * * * *
```

## O P I N I O N

The plaintiffs, husband and wife Kristian M. McCain and Kelly S. McCain, filed

this action seeking damages for breach of an alleged contract between Ms. McCain and

the United States Department of Education ("DoE") to compromise and settle her

outstanding student loan debt on a defaulted Federal Direct Consolidation Loan

("FDCL").[1]  The plaintiffs also seek declaratory relief, including judgment (1) finding

that the subject loan account is fully settled and that no further money is owed by the

---

[1] The plaintiffs also seek money damages for "out-of-pocket expenses, adverse action, costs and time of repairing their credit, pain and suffering, aggravation, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, personal and mental injuries, attorney's fees, and court costs."  Compl. ¶ 32.

plaintiffs on the account; (2) finding that the defendant has improperly seized the

plaintiffs' tax refund; and (3) ordering the return of the plaintiffs' tax refund.  The

plaintiffs also seek injunctive relief including judgment commanding the defendant to (1)

retract and cease all collection activities against the plaintiffs on the subject loan account;

(2) retract and cease negative credit and collection reporting based on the subject loan

account; and (3) return the plaintiffs' tax refund.

The defendant, the United States,[2] has moved to dismiss the plaintiffs' breach of

contract claim pursuant to Rule 12(b)(6) of the Rules of the United States Court of

Federal Claims ("RCFC") for failure to state a claim upon which relief can be granted, on

the grounds that the plaintiffs have failed to satisfy the pleading requirements of RCFC

9(k).[3]  The defendant has also moved to dismiss the plaintiffs' claims under RCFC

12(b)(1) to the extent they sound in tort or request declaratory and injunctive relief that is

---

[2] The defendant moves to dismiss the plaintiffs' claims for lack of jurisdiction to the extent they are asserted against defendants other than the United States.  In addition to the United States, the plaintiffs assert their claims against DoE and Arne Duncan, in his capacity as the Secretary of DoE.  Compl. ¶ 2.  The Tucker Act establishes this court's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  In accordance with the Tucker Act, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."  United States v. Sherwood, 312 U.S. 584, 588 (1941).  Therefore, to the extent the plaintiffs' claims are asserted against Secretary Duncan (or the DoE as a defendant apart from the United States), they are **DISMISSED** for lack of jurisdiction.

[3] "In pleading a claim founded on a contract . . . a party must identify the substantive provisions of the contract . . . on which the party relies.  In lieu of a description, the party may annex to the complaint a copy of the contract . . . indicating the relevant provisions."  RCFC 9(k).

not incident and collateral to their claim for breach of contract, on the grounds that the court lacks subject matter jurisdiction over such claims.  Finally, the defendant has moved for summary judgment upon any of the plaintiffs' surviving breach of contract claims under RCFC 56 on the grounds that the alleged contract between the plaintiffs and the government is not binding on the government for lack of authority or, in the alternative, due to unilateral mistake.[4]

## I.  BACKGROUND

### A.  History of Ms. McCain's FDCL and Alleged Compromise Agreement

The following facts are undisputed unless otherwise noted.

In July 1999, plaintiff Kelly McCain (formerly Kelly McKinnon) received a loan made under the Federal Family Education Loan Program ("FFELP") for $7,500.00 to attend Northwestern State University.[5]  Ms. McCain later defaulted on her FFELP loan. On May 9, 2005, Ms. McCain signed a promissory note to obtain a FDCL from the DoE.[6]

---

[4] Mere hours prior to oral argument on June 9, 2011, the government also filed a motion for leave to file additional supplemental authority in support of its motions.  The supplemental authority included previous editions of DoE's compromise guidance not in effect at the time the alleged contract to compromise was entered into as well as an affidavit from a DoE employee. The plaintiffs objected to the filing as untimely and prejudicial.  As explained during oral argument, because of the late filing of the government's motion and the prejudice to the plaintiffs of having to respond to the government's affidavit less than one day prior to oral argument, the government's motion is **DENIED**.  The court did not consider these materials in ruling on the pending motions.

[5] The FFELP is authorized under Title IV of the Higher Education Act of 1965, as amended 20 U.S.C. §§ 1071 et seq.

[6] FDCLs are offered through the William D. Ford Direct Loan Program as authorized under Title IV of the Higher Education Act of 1965, as amended 20 U.S.C. §§ 1087a et seq.

Pursuant to the promissory note, the DoE disbursed $11,706.95 to Ms. McCain.[7]  The

proceeds from this loan were used to repay the principal, interest, and collection costs

owed on her original student loan.  The $11,706.95 disbursement became the principal on

Ms. McCain's new loan.

On May 4, 2007, Ms. McCain defaulted on her FDCL.  Thereafter, DoE assigned

the FDCL to DoE's Default Resolution Group.  At the time of assignment, the balance of

the FDCL was $12,560.29 (this included accrued interest).

The Default Resolution Group Information Center ("DRGIC") is operated by

Vangent, Inc. ("Vangent"), a subcontractor to ACS Education Solutions, LLC ("ACS"),

under a "Common Services for Borrowers" subcontract.  On November 20, 2003, Federal

Student Aid ("FSA"), a subagency of the DoE, entered into Agreement No. Ed-04-CO-

004 with ACS, which in part authorizes ACS to "negotiate settlement agreements . . .

based on FSA provided guidelines."  See Def.'s Ex. B.  In January 2004, ACS entered

into Subcontract ACS-CSB-03-003 with Pearson Government Solutions ("Pearson") to

perform student loan collection-related tasks.  See Def.'s Ex. C.  In 2007, Pearson

changed its name to Vangent, Inc.  In 2008, Vangent and ACS executed a modification to

Subcontract ACS-CSB-03-003, which delegated the authority to "operate the DRG Call

Center in Coralville, IA and Lawrence, KS, staffed with qualified Customer Service

Representatives (CSRs) and lead staff capable of resolving inquiries from callers" to

---

[7] The McCains were not married at the time the FDCL was issued.

Vangent.  See Def's Exs. D-E.  On November 2, 2009, the "Common Services for Borrowers Compromise Guidebook," ("DRGIC Compromise Guidebook") was issued to Vangent employees.  The DRGIC Compromise Guidebook authorizes individual Vangent employees to compromise "all fees and either the lesser of:  up to 10% off combined principal and interest (round up to the nearest $5.00) or principal plus 50% of interest (round up to the nearest $5.00)."  Def.'s Ex. 4 at 1-2.

On or about September 1, 2009, the plaintiffs completed paperwork to submit Ms. McCain's FDCL for a settlement for less than the full sum due.  On September 16, 2009, the DRGIC received a financial statement form in which the plaintiffs proposed a compromise settlement of Ms. McCain's FDCL in the amount of $7,500.00.  Def.'s Ex 3 ¶ 5.[8]  On October 14, 2009, Senator Mary Landrieu sent a letter to Mr. Thomas Kelly, Assistant Secretary for Legislation at DoE, including an attached statement from Ms. McCain indicating a willingness to settle her FDCL for the original amount of $7,500.00. Def.'s Ex. 9.  A response letter to Senator Landrieu, dated November 4, 2009, from Naomi Randolph, Special Assistant for Operations Services for FSA, indicated that the outstanding balance on Ms. McCain's account was $11,980.27 as of November 2, 2009. Def.'s Ex. 10.  The letter further indicated that DoE would not accept an offer from Ms.

---

[8] The defendant indicates that DRGIC received an undated letter (Def.'s Ex. 8) from Mr. McCain on September 16, 2009 offering to settle Ms. McCain's loan for $7,500.00.  Def.'s Ex 2 ¶ 13.  The plaintiffs argue that any efforts by Mr. McCain to resolve the dispute are irrelevant, because he is not the loan holder, and therefore evidence of those efforts is inadmissable.  They have not, however, submitted any evidence to dispute the $7,500.00 compromise offer.  Under RCFC 56(e)(2), a party must provide admissible evidence to put a fact in dispute.

McCain to settle for $7,500.00 and stated, "This notice confirms our offer to accept

$9,580.00 as full settlement and satisfaction of Ms. [McCain's] obligation on this debt.

To take advantage of this offer, Ms. [McCain] must forward secured payment . . . by

January 27, 2010." Def.'s Ex. 10.[9]

Following issuance of the letter to Senator Landrieu, on December 10, 2009 a

Vangent employee sent a compromise agreement letter to Ms. McCain:

> This notice confirms our offer to accept $1,980.00 as full settlement and
> satisfaction of your obligation on this debt. To take advantage of this offer,
> you must forward secured payment (payment in the form of quick collect,
> cashier's check or money order) along with the detachable coupon at the top
> of this notice to the address on that coupon. This payment must be received
> within 90 days of the date of this notice.

Def.'s Ex. 11. On December 17, 2009, the plaintiffs mailed a cashier's check to DoE,

made payable to DoE, written in the amount of $1,980.00, and marked "pd in full."

Def.'s Ex. 13. On December 21, 2009, DoE received and cashed the plaintiffs' cashier's

check. The government, however, continued to seek payment from the plaintiffs on Ms.

McCain's loan. According to the plaintiffs, sometime after January 2010 the government

seized the plaintiffs' tax return refund for tax year 2009, in an amount less than $10,000.

On March 8, 2010, the DoE received a letter from Ms. McCain, which included copies of

the December 10, 2009 letter and the plaintiffs' cashier's check, and which stated, in

---

[9] Vangent was forwarded the letter from Senator Mary Landrieu concerning Ms.
McCain's account. Vangent contacted Daneen Allen, Senior Loan Analyst at DoE Region 5 to
have the Financial Statement form processed. Ms. Allen notified Vangent that the discretionary
compromise for $7,500.00 was denied, but that a counter discretionary compromise offer of
$9,580.00 was approved. Def.'s Ex. 3.

relevant part:

> We have written correspondence to several of your offices concerning this compromise offer.  The only written notice we ever received was the offer from you to settle this debt in full for $1,980.00 received on or around December 10, 2009.  To get this in writing took several phone calls.  We have never gotten anything else.  We made arrangements to pay that amount in full and mailed within the 90 day period as per your offer. . . . It was made for the full $1,980.00 and condition that you accept this as full payment for this debt and the offer from you is a legal document.

Def.'s Ex. 14.  The Default Resolution Group Servicing Center sent a letter in response,

dated March 22, 2010, to Ms. McCain.  Def.'s Ex. 15.  The letter stated, in relevant part:

> Our records indicate that [DoE] authorized a compromise settlement of your account.  Compromise settlements are normally payable in one lump sum and have an expiration date after which the agreement is null and void.  On November 4, 2009, we sent a letter to Senator Mary Landrieu stating that [DoE] agreed to settle your account for $9,580.00 to be received by January 27, 2010.  This amount was not received by the due date, and the offer expired.

> The compromise agreement letter dated December 10, 20[09], that you presented was sent in error.  We apologize for any confusion this may have caused you.

> On December 21, 2009, [DoE] received a payment in the amount of $1,980.00[].  This payment was not sufficient to satisfy your debt in full.  Our records do not show that you disputed the balance due in writing or presented any valid defense against repayment of the full balance due before you made the payment.  There was no benefit to [DoE] in accepting the amount of $1,980.00 as settlement in full.  Therefore, [DoE] does not accept the payment as settlement in full, even though the check was conditionally endorsed.  [DoE] finds your student loan debt is legally enforceable.

> The amount needed to satisfy the outstanding balance on this account is $10,087.99, as of March 22, 2010.

Id.

As of a September 27, 2010 printout of Ms. McCain's FDCL Account Transaction Screen, two payments were reflected as having taken place after the plaintiffs' $1,980.00 payment, one in the amount of $3,410.00 and one in the amount of $25.00.  Def.'s Ex. 12.

### B.  History of the Proceedings

On April 28, 2010, the plaintiffs filed the present action.  On October 8, 2010, the government filed a motion to dismiss the complaint in part, and its motion for partial summary judgment.  The parties completed briefing on those motions on January 6, 2011.  On March 14, 2011, the court ordered supplementary briefing on the authority of the Secretary of Education to compromise FDCLs and how that authority is delegated.  On April 25, 2011, the government filed its brief on these issues, providing supplemental authority for its argument that it is entitled to summary judgment on the grounds that the December 2009 Vangent offer is not binding on the government for lack of authority.  The plaintiff chose not to file any response.  Oral argument held on June 9, 2011 focused primarily on the authority issue, and the court will address it first.

## II.  STANDARDS OF REVIEW

### A.  Dismissal for Lack of Jurisdiction

The standard for ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is well-settled.  The plaintiff bears the burden of establishing subject matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d

1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors, 298 U.S. 178, 189 (1936)),

and must do so by a preponderance of the evidence, Reynolds v. Army & Air Force Exch.

Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  Because jurisdiction is a threshold matter, a

case can proceed no further if a court lacks jurisdiction to hear it.  See Arbaugh v. Y & H

Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks

subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation

omitted)); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998).  See generally

John R. Sand & Gravel v. United States, 552 U.S. 130 (2008).

When a party has moved to dismiss for lack of subject matter jurisdiction, the

alleged facts in the complaint are viewed as true.  Pixton v. B & B Plastics, Inc., 291 F.3d

1324, 1326 (Fed. Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see N.

Hartland, L.L.C. v. United States, 309 F. App'x 389, 392 (Fed. Cir. 2009) (the court

"takes the allegations in the pleadings as true and construes them in the light most

favorable to the complainant").  When a court considers a motion to dismiss for lack of

subject matter jurisdiction, it may look beyond the pleadings and "inquire into

jurisdictional facts" to determine whether jurisdiction exists.  Rocovich v. United States,

933 F.2d 991, 993 (Fed. Cir. 1991).

### B.  Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  RCFC

56(c)(1); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283

(Fed. Cir. 2008); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323

(Fed. Cir. 2001) (citation omitted).  In considering a motion for summary judgment, the

court's role is not to "weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be

drawn in his favor."  Id. at 255; see also Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Lathan Co., Inc. v.

United States, 20 Cl.Ct. 122, 125 (1990); Casitas Mun. Water Dist., 543 F.3d at 1283.

When a motion for summary judgment is properly made and supported, an opposing party

may not rely merely on allegations or denials in its own pleading; rather, its response must

– by affidavits or as otherwise provided in RCFC 56 – set out specific facts showing a

genuine issue for trial.  RCFC 56(e)(2).  "If the opposing party does not so respond,

summary judgment should, if appropriate, be entered against that party."  Id.

## III.  DISCUSSION

### A.  The Government Is Entitled to Summary Judgment on Ms. McCain's Contract Claim.

#### 1.  The Court Has Jurisdiction over Ms. McCain's Contract Claim.

The Tucker Act confers jurisdiction upon the Court of Federal Claims to hear

claims arising from "any express or implied contract with the United States." 28 U.S.C. §

1491(a)(1) (2006).  As the basis of their claim for breach of contract the plaintiffs allege

that on December 10, 2009 a Vangent employee acting on behalf of the DoE wrote

plaintiff Ms. McCain an offer to compromise her FDCL loan, then in default, for

$1,980.00.  As noted above, the alleged offer to compromise stated, in relevant part:

> This notice confirms our offer to accept $1,980.00 as full settlement and
> satisfaction of your obligation on this debt.  To take advantage of this offer,
> you must forward secured payment (payment in the form of quick collect,
> cashier's check or money order) along with the detachable coupon at the top
> of this notice to the address on that coupon.  This payment must be received
> within 90 days of the date of this notice.

Compl. ¶ 8; Def.'s Ex. 11.  The plaintiffs further allege that they accepted and complied

with the clear written terms of the offer on December 17, 2009 by sending by certified

mail a cashier's check in the amount of $1,980.00 to the address provided, which the

government received on December 21, 2009 and then cashed.  Compl. ¶¶ 9-11, 14.  The

plaintiffs further allege that the government subsequently breached the alleged

compromise agreement by continuing to seek payment from Ms. McCain on the

remainder of her loan.  Compl. ¶¶ 12-13, 15-16.  Based on the facts alleged the court

finds that the correspondence between Ms. McCain and Vangent, a subcontractor of the

DoE, established a contract to compromise and settle Ms. McCain's FDCL debt for

$1,980.00 and that the government has potentially breached that contract by continuing to

seek payment for the remainder of Ms. McCain's student loan debt.[10]

The court agrees, however, with the government that Mr. McCain cannot maintain a claim for breach of contract because he was not a party to the FDCL loan, was not the recipient of the Vangent compromise letter, and is not liable for Ms. McCain's student loan debt. The fact that the government has allegedly retained the McCains' tax refund

---

[10] The government seeks to dismiss the plaintiffs' contract claim on the grounds that the complaint fails to comport with RCFC 9(k) because the plaintiffs failed to identify the substantive provisions of a contract in the complaint. The plaintiffs argue that they have identified the substantive provisions of a contract in the complaint by alleging that a writing dated December 10, 2009 constituted an offer from the government to compromise and settle Ms. McCain's FDCL for $1,980.00. The court agrees with the plaintiffs. The relevant portions of the complaint read as follows:

> On December 10, 2009, [DoE] wrote plaintiff KELLY S. MCCAIN F/K/A KELLY S. MCKINNION and indicated that "THIS NOTICE CONFIRMS OUR OFFER TO ACCEPT $1,980.00 AS FULL SETTLEMENT AND SATISFACTION OF YOUR OBLIGATION ON THIS DEBT . . ."
> Based on the clear, written terms of the offer, Plaintiffs immediately [on December 17, 2009] drafted monies from their joint bank account and had a cashier's check made payable to [DoE] prepared by Barksdale Federal Credit Union.[]
> Plaintiffs' acceptance communication along with the check were transmitted via US Mails, Certified Mail Return Receipt, to [DoE] as stated in the offer.
> [DoE] received the check and acceptance of the offer and signed for receipt of the mail on December 21, 2009.
> Despite receipt, [DoE] sent a bill to plaintiffs, demanding $11,978.80.
> . . . .
> Defendants had cashed the plaintiffs' check and taken in her monies, as reflected on later billing statements . . . .

Compl. ¶¶ 8-12, 14. The plaintiffs' complaint clearly meets the requirements for pleading a contract: it alleges an offer (the compromise agreement letter dated December 10, 2009, see Def.'s Ex. 11) and acceptance (the plaintiffs' alleged compliance with the terms of the December 10, 2009 letter) and it involves the trading of consideration (the government allegedly agreed to settle Ms. McCain's debt and the plaintiffs agreed to pay $1,980.00). Accordingly, the court finds that the plaintiffs have plead a contract in compliance with the pleading requirements of RCFC 9(k).

does not alter this conclusion.  Mr. McCain has not filed a tax refund action in this case.

He argues only that he is entitled relief based on breach of contract.  Because he has no

contract with the government, the court must dismiss his breach of contract claim.

> **2.  The Government Is Not Bound by the Vangent Letter for Lack of Authority and Therefore Has Not Breached Any Agreement to Settle Ms. McCain's Student Loan for $1,980.00.**

Ms. McCain bases her entire breach of contract claim on the December 10, 2009

offer to compromise her student loan debt for $1,980.00 sent to her by a Vangent

employee on behalf of DoE.  The government moves for summary judgment on the

grounds that it is not bound by the offer to compromise her student loan debt for

$1,980.00 and therefore the government has not breached any agreement by seeking to

recover the remainder of her student loan debt from her.  The government explains that

any offer to compromise and settle a student loan debt must be authorized and approved

by the Secretary of Education, or his authorized delegates, in accordance with sections

432(a) and 468 of the Higher Education Act of 1965, which authorize the Secretary of

Education to collect, write-off, and compromise claims of the DoE against individuals

arising from their obligation to repay current or defaulted student loans held by the DoE.

See 20 U.S.C. § 1082(a)(6) (the Secretary may "enforce, pay, compromise, waive, or

release any right, title, claim, lien, or demand, however acquired, including any equity or

any right of redemption") (emphasis added); see also § 1087hh(2) (same).  In particular,

the government relies upon the DRGIC Compromise Guidebook, discussed above, which

limits an individual DRGIC employee's authority to compromise to "all fees and either the lesser of:  up to 10% off combined principal and interest (round up to the nearest $5.00) or principal plus 50% of interest (round up to the nearest $5.00)."  Def.'s Ex. 4 at 1-2.  The government argues that because the offer made by the DRGIC Vangent employee was for significantly less than the amount delegated to an individual Vangent employee without Department of Education approval, the Vangent employee who sent the December 2009 letter exceeded the scope of his authority and the government is therefore not bound by the terms of the December 10, 2009 offer to compromise.  While the court can understand the plaintiff's confusion resulting from the December 2009 letter, for the reasons set forth below the court finds the government is entitled to summary judgment. Unfortunately, for Ms. McCain strict rules apply with regard to contracting with the government and among those rules is the rule that government contracts must be authorized to be binding.

It is well settled that the federal government cannot be bound by agents acting outside the bounds of their authority.  See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . . And this is so even though . . . the agent himself may have been unaware of the limitations upon his authority."); Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1260

(Fed. Cir. 2005) ("[T]he government can only be bound by those with authorization to do so."); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432 (Fed. Cir. 1998) (the burden is on the plaintiff to prove that the government agent had the authority to enter into the contract); Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States."). For this same reason, estoppel against the government cannot be based on the unauthorized representation or action of an employee without authority to bind the government. OPM v. Richmond, 496 U.S. 414, 419-20 (1990); Emeco Indus., Inc. v. United States, 485 F.2d 652, 657 (Ct. Cl. 1973). As explained below, the Secretary's authority to compromise and settle Ms. McCain's FDCL loan was delegated, in part, to the individual Vangent employee who made the December 2009 offer. However, the boundaries of the Vangent employee's authority were limited by the DRGIC Compromise Guidebook. Accordingly, to the extent the individual Vangent employee's actions were outside of those boundaries, the actions are not binding on the government and the government cannot be estopped by the terms of the offer.

The DoE delegation process provides that the Secretary "may delegate any function to such officers and employees of the Department as the Secretary may designate, and may authorize such successive redelegations of such functions within the Department as may be necessary or appropriate." 20 U.S.C. § 3472. Pursuant to 20

U.S.C. § 3472, the Secretary has delegated the authority "to enforce, compromise, waive, and write off the collection of claims of the Department against individuals who have . . . defaulted on their obligation to repay loans or grant overpayments held by the Department" to the Director of Program Management Services for FSA, and his or her "successor in function, and anyone serving for [him or her] in an acting capacity." See Def.'s Ex. A (Delegation EA/EN/68 dated November 9, 2009, Subject: "Delegation of Authority for Collection and Compromise of Claims against Individuals under the Federal Student Aid (FSA) Programs" replacing similar earlier delegations). FSA has further delegated limited authority to DRGIC employees, through the DRGIC Compromise Guidebook. The Guidebook authorizes individual DRGIC employees to compromise with borrowers "all fees and either the lesser of: up to 10% off combined principal and interest . . . or principal plus 50% of interest" without obtaining further approvals. Def.'s Ex. 4 at 1-2.

The court finds that there is no genuine issue as to any material fact in this case. At the time the Vangent employee issued the compromise offer, Ms. McCain's account balance was approximately $11,980. Therefore, under the terms of the DRGIC Compromise Guidebook, 10% off combined principal and interest (approximately $1,200) would have yielded an offer to compromise of approximately $10,700. The $1,980.00 offer made by the Vangent employee to Ms. McCain fell well below the amount authorized without further approval by the terms of the DRGIC Compromise

Guidebook.[11]  The undisputed facts establish that the DRGIC notified Ms. McCain in March 2010 that the December 2009 offer was made in error and that there was no "authorized" decision thereafter to resolve her debt for only $1,980.00.  Because the Vangent employee's actions were not authorized by DoE under the delegations granted to individuals at DRGIC, the offer to settle the loan debt for $1,980.00 is not binding on the government.

The plaintiff has not presented any evidence to challenge the government's evidence of unauthorized action by the Vangent employee.  In addition, even if the offer could have been later ratified by an authorized DRGIC employee or other appropriate government official, as argued by the plaintiff's counsel at oral argument, the plaintiff did not present any evidence to show that any appropriate official did so here.  See Harbert/Lummus, 142 F.3d at 1433 ("Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts.").  Rather, the authorized government agents have consistently stated that the letter dated December 10, 2009 was sent in error.  See Def.'s Ex. 15.  The burden is on a plaintiff to establish that the party who acted is in fact authorized.  See Merrill, 332 U.S. at 384 ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the

---

[11] Indeed, because Ms. McCain's balance at the time the letter was sent was $11,980, it appears that the $1,980 offer was simply a typographical error.

bounds of his authority."); <u>Harbert/Lummus</u>, 142 F.3d at 1432.  Because the court has no

evidence before it to support the plaintiff's contention that someone with of authority

authorized the December 2009 letter it must find for the government.[12]

For these reasons, the court finds the government never agreed to settle Ms.

McCain's student loan debt for $1,980 and thus did not breach any agreement by

continuing to seek repayment of her student loan debt.[13]

**B.  The Plaintiffs' Remaining Claims Must Be Dismissed for Lack of
Jurisdiction.**

**1.  The Plaintiffs' Tort Claims Must Be Dismissed for Lack of
Jurisdiction.**

Among their claims, the plaintiffs seek compensation for "pain and suffering,

aggravation, embarrassment, inconvenience, lost economic opportunity, loss of incidental

time, frustration, emotional distress, mental anguish, fear of personal and financial safety

and security, [and] personal and mental injuries."  Compl. ¶ 32.  The plaintiffs have also

alleged damages related to false credit reporting.  Compl. ¶¶ 21, 22, 27, 28, 32.  The

---

[12] The plaintiff's argument that the government's acceptance of a check marked "pd in full" constitutes an accord and satisfaction of Ms. McCain's loan obligation is similarly unpersuasive.  Where, as here, no evidence has been presented that anyone with authority to compromise claims on the terms alleged by the plaintiff handled the plaintiff's check, the government is not bound by plaintiff's language on her check.

[13] The government also argues on summary judgment that the representations made in the Landrieu letter and other communications between the plaintiffs and the government demonstrate from this correspondence plaintiff's knew that the government had never considered settling plaintiff's claim for less than $9,000.  Plaintiffs claim that a deal was struck for $1,980 is not binding based on the theory of unilateral mistake.  Because the court concludes for the above-stated reasons that the settlement agreement was not authorized and therefore not binding on the government, it does not reach this argument.

government argues pursuant to RCFC 12(b)(1) that the court does not have jurisdiction over these claims because they sound in tort and lack the requisite nexus to a valid contract claim.  Def.'s Mot. 11-12; Def.'s Reply 5-6.  The plaintiffs argue that the Tucker Act permits the court to assert jurisdiction over each of these claims because, although they sound in tort, they are based upon the government's alleged breach of the 2009 Vangent agreement.  Pl.'s Resp. 16.[14]

The court agrees with the government.  As stated above, under the Tucker Act, this court possesses jurisdiction over claims "in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  Ordinarily this court does not have jurisdiction over tort claims; however, the

---

[14] Alternatively, the plaintiffs argue for the first time in their response to the defendant's motion to dismiss or for summary judgment that the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, gives rise to recoverable damages for their alleged tort claims. Pl.'s Resp. 17-18. The Federal Circuit held in Bormes v. United States, 626 F.3d 574, 581-82 (Fed. Cir. 2010), reh'g & reh'g en banc denied (Mar. 15, 2011), that the FCRA is a money-mandating statute for the purposes of Tucker Act jurisdiction.  In Bormes, the Circuit noted that FCRA claims, like other claims arising under the Tucker Act, are subject to the jurisdictional limitations of the Tucker Act, observing:

> This court is also aware that FCRA provides for punitive and criminal punishment, which cannot be imposed upon the government under the Tucker Act. . . . This limitation on Tucker Act remedies does not mean that FCRA is not money-mandating.  Rather this limitation means that FCRA's money-mandating provisions do not extend beyond certain types of claims . . . . Similarly, FCRA permits recovery for negligence, but the Tucker Act does not permit negligence claims. . . . [H]owever, a negligence claim is different than a statutory claim that includes an element which is analyzed under a negligence standard.

Id. at 582 (citations omitted).  However, as the plaintiffs did not assert a claim for relief under FCRA in their complaint and have not moved to amend their complaint to include claims for relief under FCRA, the court may not at this time treat the plaintiffs' tort claims as FCRA claims as a basis for finding jurisdiction.

Federal Circuit has held, "[W]here a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within . . . jurisdiction of the Court of Federal Claims." Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002); see also Wood v. United States, 961 F.2d 195, 198 (Fed. Cir. 1992) ("If an action arises 'primarily from a contractual undertaking,' jurisdiction lies in the [Court of Federal Claims] 'regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.'" (quoting San Carlos Irrigation and Drainage Dist. v. United States, 877 F.2d 957, 960 (Fed. Cir. 1989))).  The plaintiffs' tort claims are therefore dependent on their contract claim alleging the government's breach of the contractual relationship allegedly established by the December 10, 2009 compromise agreement letter.[15]  Because the court has held that the alleged compromise agreement is not binding on the government for lack of authority, the plaintiffs' tort claims lack a valid contractual basis that could vest this court with jurisdiction.  For this reason, the plaintiffs' tort claims must be dismissed for lack of jurisdiction.

### 2. The Plaintiffs' Claims for Declaratory and Injunctive Relief Must be Dismissed for Lack of Jurisdiction.

Among their claims, the plaintiffs also seek declaratory relief, including a judgment (1) finding that the subject loan account is fully settled and that no further money is owed by the plaintiffs on the account; (2) finding that the defendant improperly

---

[15] At oral argument on June 9, 2011, counsel for the plaintiff conceded that the plaintiffs' tort claims are dependent on their contract claim.

seized the plaintiffs' tax refund; and (3) ordering the return of the plaintiffs' tax refund.

Compl. ¶¶ 26, 29.  The plaintiffs further seek injunctive relief including a judgment

commanding the defendant to (1) retract and cease all collection activities against the

plaintiffs on the subject loan account; (2) retract and cease negative credit and collection

reporting based on the subject loan account; and (3) return the plaintiffs' tax refund.

Compl. ¶¶ 27, 28, 30.  The plaintiffs argue that the Tucker Act permits the court to assert

jurisdiction over each of these claims.  The defendant argues that the court does not have

jurisdiction over these claims, arguing that they are not "collateral to" a valid claim for

contract damages.

Again, the court must agree with the government.  The Court of Federal Claims

may issue equitable relief against the United States in very limited circumstances.  In

order to provide an entire remedy and to complete the relief afforded by a money

judgment, the Tucker Act provides the court with authority to issue equitable orders as

"an incident of and collateral to" such money judgment.  See 28 U.S.C. § 1491(a)(2).

Therefore, the court must have before it a valid claim for monetary relief before the court

can exercise jurisdiction over claims for declaratory or injunctive relief.[16]  See Brown v.

United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act does not provide

independent jurisdiction over such claims for equitable relief.") (citing United States v.

---

[16] Other exceptions to the general rule are not applicable to this case.  See, e.g., 28 U.S.C.
§ 1491(b)(2) (providing the Court of Federal Claims jurisdiction to grant equitable and
extraordinary relief in order to afford complete relief on a bid protest claim brought before the
court).

King, 395 U.S. 1, 2-3 (1969)); Simanonok v. Simanonak, 918 F.2d 947, 952 (Fed. Cir.

1990) ("[I]njunctive claims . . . are not cognizable in a Little Tucker Act or Tucker Act

case, absent a concurrent colorable claim for monetary recovery.") (citing Richardson v.

Morris, 409 U.S. 464 (1973) (per curiam); Lee v. Thornton, 420 U.S. 139 (1975) (per

curiam)).  In this case, the plaintiffs' claims for injunctive and declaratory relief are

dependent on the success of plaintiffs' primary claim for breach of contract.[17]  Because

the court has held that the government is entitled to judgment on plaintiffs' contract

claims, the predicate for these additional claims is missing.  Accordingly, these claims

must be dismissed for lack of jurisdiction.

## IV.  CONCLUSION

For the above-stated reasons the government's motion for summary judgment on

plaintiff Kelly McCain's contract claim is **GRANTED**.  All of the plaintiffs' remaining

claims shall be **DISMISSED**. Clerk is directed to enter judgment accordingly.  Each party

is to bear its own costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone_____
NANCY B. FIRESTONE
Judge_

---

[17] At oral argument on June 9, 2011, counsel for the plaintiff conceded that the plaintiffs' claims for declaratory and injunctive relief are dependent on their contract claim.